## W. G. WADE *v.* FIRST NATIONAL BANK OF FRANKLIN.

**Promissory Note—Representations to Induce Signature.**

It is the duty of a creditor to deal with one who becomes bound to him as surety for his debtor in the utmost good faith, but he is not bound to make unsought disclosures of the amount of the principal's indebtedness.

**Usury.**

To receive usurious interest in advance is as much a violation of the statute as to contract for its payment at a future time.

APPEAL FROM SIMPSON CIRCUIT COURT.

October 21, 1875.

Opinion by Judge Pryor:

That part of the answers in which it was attempted to set up the fact that the bank had loaned to Collier, Taylor & Co., a sum exceeding ten per cent. of its capital stock then paid in, did not show that the loans referred to were exclusive of discounts of bona fide bills of exchange drawn against actually existing values, and of commercial paper actually owned by them, and consequently did not show that the bank had violated the provisions of Sec. 29 of the National Currency Act. The demurrer to that part of the answer did not, for this reason, raise the question whether a note or bill taken for loans made in violation of that section could be enforced. There is nothing in either answer sufficient to avoid the note or bill on the ground of fraud or misrepresentation, or of the suppression of facts, which it was the duty of the bank to communicate. One of the misrepresentations relied upon in the answer to the petition on the bill are that the cashier, a few minutes after the appellant had signed the bill, represented to him that said bill was but the renewal of an old note for $2,000; that a member of the firm of Collier, Taylor & Co., made the same representation to him before he signed the bill; and that he was thereby induced to sign it; and that said representations were false. Of course false representations made by one of his principals cannot have the effect to absolve him from his obligation to the bank, and the representations of the cashier having been made after he signed, it cannot have induced his signature which was already made.

The amended answer in one of the cases which attempts to avoid liability on the ground that the bank suppressed information as to the amount of the indebtedness of Collier, Taylor & Co., to it, does not state facts sufficient to show that it was the bank's duty to give information on that subject; nor was the appellant authorized to assume that their indebtedness did not exceed ten per cent. of the paid up capital of the bank. As we have already seen, it nowhere appears that the bank had loaned them any more than it had a legal right to loan, and it cannot be held to have been the duty of the officers of the bank unasked to disclose the amount of its customers' indebtedness to it.

We recognize to its fullest extent the duty of a creditor to deal

with one who becomes bound to him as surety for his debtor in the utmost good faith; but this duty does not go to the extent of requiring unsought disclosures of the amount of the principal's indebtedness. The appellant nowhere avers that he made inquiry of any of the officers of the bank as to the amount of the indebtedness of Collier, Taylor & Co. to it, or even that he would have refused to endorse for them if he had known what it was. Nor is he exonerated from liability on account of the alleged payment of usury. He does not even allege that he was ignorant of the rate of interest being paid.

We perceive no error in either judgment to the prejudice of the appellant. The answers of the appellant do not charge the payment of usury upon the debts evidenced by the note and bill, to the extent to which credits were allowed by the court below. The substance of the allegations on this point is that the bill and note were given for loans, and that the bank, at the time, collected interest at the rate of twelve per cent. per annum, and that within two years then last past, the firm of Collier, Taylor & Co. had paid to the bank in usurious interest, a sum exceeding the amounts sued for. There is no allegation that any usury had been paid upon either the bill or note, or upon any previous notes or bills for the same debts, except that paid at the time of discounting the bill and note sued on; and the amount of interest and usury then paid was all appellant had a right to have credited on them, respectively.

Counsel for the bank insists that even this cannot be allowed, because he says the forfeiture of interest, consequent upon charging more than the legal rate, is a penalty imposed by an act of congress, and that state courts cannot enforce such a penalty. We concede that the state courts have ordinarily no jurisdiction to enforce the penal statutes of the federal government; but we think it does not follow from this that a party sued in a state court upon a contract in violation of a penal law of the United States, may not set up the illegality of the contract as a defense. Under the act of congress, the payment of twelve per cent. annually at the time of borrowing the money was illegal, and the money so paid may, at the election of any person bound on the note or bill, be treated as a payment pro tanto thereon. But the contract was equally in violation of the laws of this state; and the payment of usury may be applied as payment on the principal of the debts without the aid of the act of congress.

We do not concur with counsel that the state statute does not

apply to a case where interest, instead of being charged, is reserved at the time of making the loan. The word "charge" used in our statute was intended to cover every phase of an usurious transaction. To hold otherwise would be to convict the legislature of the extreme folly of so framing a highly penal statute as to enable even the most unsophisticated usurer to evade its provisions at pleasure. We are clearly of the opinion that to receive usurious interest in advance is as much a violation of the state statute as to contract for its payment at a future time.

. For the error in allowing the appellant credits for usury, paid prior to the time of the execution of the note and bill, the judgments are *reversed* on the cross-appeals, and the causes are remanded for new trials upon principles not inconsistent with this opinion. The judgments are *affirmed* on the original appeals.

*W. P. D. Bush, for appellant. R. Rades, for appellee.*